JAMES SCOTT YOH
3000 Marcus Avenue, Suite 3w8
Lake Success, NY 11042
Tel.: (516) 817-0188
yohlaw@gmail.com
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| SHENGMENG WANG,<br><br>Plaintiff,<br><br>-against-<br><br>CHUNG FAT SUPERMARKET INC., YUE MEI JIANG, ZHI LIANG CHEN, XUE FEN JIANG, and XIN XIN CHIANG,<br><br>Defendants. | Case No. 1:25-cv-02236-MKB-PK |

**PLAINTIFF SHENGMENG WANG'S MEMORANDUM OF LAW**
**IN OPPOSITION TO**
**DEFENDANTS' RULE 12(B) MOTION TO DISMISS**
**THE AMENDED COMPLAINT**

**Preliminary Statement**

The late Honorable Irving Ben Cooper (February 7, 1902 – September 17, 1996)

served as a U.S. District Judge for the SDNY from 1961 until taking senior status in

1972, and then continued hearing cases in senior status until his death at age 94 in 1996.

Known for his rigorous analysis, Judge Cooper, in 1979, addressed a courtroom of

attorneys newly admitted to the federal court, stating:

I see lawyers -- bless them! -- out of whose hands we eat. They serve it up to us. That's a glorious day for a judge.

\* \* \* \* \*

Finally: In a busy tribunal particularly, the judge must make up his mind quickly as to whether he [or she] can afford to rely or depend on counsel before him.

Proceedings Concerning Admission to the Bar, etc., October 30, 1979, p.10, lns. 20-22, & p. 15, lns. 24-25, through p. 16, ln. 2, before Judge Irving Ben Cooper (S.D.N.Y. 1979) (transcript available upon request). Those words echo and reverberate on this motion.

## The Action

In this action, Plaintiff Shengmeng Wang seeks damages for his illegal firing and the retaliatory action he suffered by the defendants for his attempts to stop sexual harassment at the workplace. Unlike many other actions, the defendants' acts of sexual harassment were captured on video surveillance tape in the plaintiff's possession.

Apparently desperate because of the smoking gun evidence, the defendants are leaving no stone unturned to seek the Amended Complaint's dismissal. Their motion to dismiss improperly conflates the statute of limitations together with a state statute that requires service of a summons with complaint within 120 days of its filing [which defendants bizarrely contend is 60 days] -- a requirement that, under federal law, became totally inapplicable once this case was transferred and removed to this Court.

The defendants' frequent and numerous misrepresentations of the law, failure to cite the governing statutes, and conflating an incorrect statute of limitations argument

-2-

with an offensive mangling of the procedural law, especially since removal was already accomplished, represent a major departure from proper advocacy.

The profoundly troubling and disturbing misrepresentations extend even to the defendants' discussion of the amended complaint's assertion of retaliation and aiding and abetting claims that are replete with facts. The plaintiff has thus begun this Opposition Memorandum of Law with the eloquent words of the late Judge Cooper, whose judicial service in both state and federal courts spanned decades. Judge Cooper understood that trustworthiness is the indispensable element of an advocate's arsenal. Without such trustworthiness and integrity, a lawyer's ostensible skills are meaningless. The plaintiff will correct the many pertinent misrepresentations of defendants. The motion to dismiss, in short, should be entirely denied, with any other relief that this Court, in its discretion, believes is warranted. A proposed Order is being submitted for the Court's convenience.

## POINT I

### THE DEFENDANTS IMPROPERLY CONFLATE A STATUTE OF REQUIREMENT WITH A PROCEDURALLY INCOHERENT, SUPPOSED CONTINUING OBLIGATION TO SERVE A STATE SUMMONS WITH NOTICE EVEN THOUGH THIS ACTION WAS REMOVED TO FEDERAL COURT

The plaintiff properly served the Amended Complaint in this case on July 16, 2025 - - well before the deadline set by this Court - - inside the defendant Chung Fat's supermarket located in Downtown Flushing, New York, and service was duly acknowledged by the defendants acknowledging receipt. Not being able to attack the service of process, or to address the substance of the Amended Complaint in their supposed Rule 12(b) motion, the defendants desperately construct arguments that are

-3-

made of whole cloth and without any legal support. Since the defendants are represented by experienced federal litigators, the baseless arguments, elaborated upon below, will be profoundly troubling and disturbing to this Court that, while appreciating zealous advocacy, knows that even such advocacy has strict limits and boundaries.

The defendants in their memorandum recite that the plaintiff was fired on March 10, 2022 [although the plaintiff believes that the termination occurred on March 9], and filed a state summons with notice on March 6, 2025, within the three-year statute of limitations. What then follows, however, is defendants' surreal conflation of the statute of limitations with a warped, mangled misinterpretation of state procedural requirements, replete with failure to cite pertinent statutes, and fictional contentions of law about a supposed "60-day" deadline for filing a summons with notice that, at any rate, became entirely moot once the removal to this Court occurred on April 22, 2025.

Defendants' reliance on Rule 12(b)(6) to argue that Plaintiff was obligated to serve a state court summons with notice after removal is not merely incorrect—it is procedurally incoherent. Rule 12(b)(6) tests the legal sufficiency of the allegations in the complaint, not compliance with service requirements. Alleged defects in service of process are addressed, if at all, under Rule 12(b)(5), and courts in this Circuit have repeatedly rejected attempts to collapse distinct procedural objections into a merits-based dismissal.

Defendants cite no authority supporting the extraordinary proposition that a complaint which otherwise satisfies Rule 8 can "fail to state a claim" because Plaintiff

-4-

purportedly did not serve state-court process after removal.  That position finds no support in the Federal Rules, 28 U.S.C. § 1448, or any decision of this or any other Court.

Defendants' misuse of Rule 12(b)(6) reflects a fundamental misunderstanding of the Federal Rules of Civil Procedure.  Service of process concerns personal jurisdiction and notice, not the legal sufficiency of a plaintiff's claims.  Accepting the defendants' theory would mean that a complaint that fully satisfies Rule 8 could, nevertheless, "fail to state a claim" based solely on an alleged obligation to serve state process after removal - - a preposterous proposition that is unsupported by statute, rule, or case law.

The arguments contained in Defendants' Memorandum of Law not only fail to meet the aforementioned standard articulated by Judge Cooper for responsible, reliable, and trustworthy advocacy, but, as detailed below, the defendants' arguments border on the frivolous and chimerical, and their misrepresentations of law are improper, if not offensive.

The defendants argue that the federal action must be dismissed because (1) the plaintiff's state summons with notice was not specific enough in describing all the causes of action and relating facts;  (2) the state summons with notice was not served on the defendants even though the federal action was removed to this Court; and (3) the statute of limitations expired on the causes of actions because the plaintiff failed to serve the state summons with notice within "60 days" [a fiction] of the filing of the state summons with notice, even though the action was removed before any service deadline.

The plaintiff's state summons with notice, filed on March 6, 2025, provided:

> **Notice:** The nature of this action is violations of New York Labor Law, violations of 26 USC § 7434, violations of NYSHRL, torts, and other related causes of action.

> The relief sought is damages to be determined at trial to be no less than $1,000,000.

The plaintiff's description in the state summons with notice was sufficient, as discussed below, because it did the job of stating enough information so as to alert the defendants of their ability and right to remove an action to state court - - which they did. The defendants' argument is that, even though they removed the action to federal court, they can totally non-suit a plaintiff by removing the case to this Court before the deadline for service in state court expired and then attacking the non-service of the pleadings filed in state court. The defendants' sleight of hand and wish to make this sexual harassment case disappear just won't work. Other defendants have previously and unsuccessfully attempted the same offensive argument. As Judge Lewis J. Liman of the Southern District of New York stated, discussed further below, to accept such an incorrect argument would, in effect, leave a plaintiff with no forum. *See, Stevens & Co., LLC v. Espat*, 2024 WL 4593645, at *3 (S.D.N.Y. 2024).

The defendants' incorrect argument is in clear violation of 28 U.S.C. section 1448 that specifically states, upon removal, it is only federal law that controls the service of process, and not state law. As stated in one respected treatise on federal law:

> The sufficiency of service made after removal, however, is to be judged under federal rather than state law. In precisely this context it has been said that Section 1448 indicates a philosophy "that removed cases are

to be handled substantially as though they had never been in a state court." Thus, when one of several defendants was not served prior to removal it has been held that there is no process to "complete" and new process must be issued pursuant to Rule 4. Since the federal courts have demonstrated a desire to prevent unnecessary dismissals by retaining removed cases and curing defects in the state court service, the defendant can obtain a dismissal after removal only when the original service in the state court was improper, and the plaintiff finds it impossible to perfect service under Rule 4 after removal.

4A Wright & Miller, Fed. Prac. & Proc. Civ. § 1082, "Service in Removed Actions" (4th ed.) (footnote references omitted; citing numerous cases in footnotes 7-10).

**Here is the relevant timetable**:

**Filing of the state summons with notice: March 6, 2025** [timely under a 3-year statute of limitations date of either March 9 or 10, 2025]

**Removal to federal court:**                 **April 22, 2025**

The defendants contend that although they removed the federal action to federal court on April 22, 2025, the plaintiff had until May 9, 2025, to serve the summons with notice. Putting aside that defendants are completely wrong in giving a 60-day deadline for the service of a summons with notice to be accomplished,[1] the truth is that once the

---

[1] In contending that the plaintiff had 60 days to serve the summons with notice, the defendants cite *Cheselka v. Eastern Air Lines, Inc.* 93 Misc. 2d 219 (Sup. Ct. New York County 1978). The correct date for such service in a state court action is 120 days, as set forth in CPLR 306-b that is not even mentioned or cited by defendants, and that statute was enacted in 1992. The history of CPLR 306-b is thoroughly discussed in *Bumpus v. New York City Tr. Auth.*, 66 A.D.3d 26 (2nd Dept. 2009). At any rate, the defendants' gross misrepresentation of the law notwithstanding, a discussion of the time limits, facing a garden variety plaintiff in state court, to serve a summons and notice is entirely moot, since once an action is removed to a federal court, as discussed herein, the requirements of service are governed exclusively by the Federal Rules of Civil

case was removed to federal court, the state action ceased to exist, unless in case of remand by this Court back to the state court. Once the action was removed from the state court to this Court on April 22, 2025, there was no need for the plaintiff to serve the state summons with notice. In fact, to do so, would have violated the law.

28 U.S.C. section 1446(d), governing procedure after removal of an action to federal court, expressly states:

> (d) Notice to adverse parties and State court.--Promptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal *and the State court shall proceed no further unless and until the case is remanded.* [emphasis added by italics].

In the present case, to accept defendants' argument that the plaintiff was required to complete the service of the state court summons with notice would plainly abridge section 1446(d), which is a law enacted by Congress. Once the action is removed, service of process of the complaint and amended complaint, under 28 U.S.C. section 1448, are completely governed by the Federal Rules of Civil Procedure. Section 1448, Title 28 of the United States Code, furthermore, provides:

> In all cases removed from any State court to any district court of the United States in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as

---

Procedure and federal law, including Rule 81(c) and 28 U.S.C. sections 1446, 1447, and 1448, the relevant portions of which are all quoted herein.

in cases originally filed in such district court.

28 U.S.C. § 1448. "[A]fter an action is removed, federal law governs, and defects in service can be cured in accordance with federal rules of procedure." *Cowen v. Am. Med. Sys., Inc.,* 411 F. Supp. 2d 717, 720 (E.D. Mich. 2006); *see, e.g., Weinberg v. Colonial Williamsburg, Inc.,* 215 F. Supp. 633, 635 (E.D.N.Y. 1963) (Zavatt, J.) (holding that "[t]he Court will not . . . dismiss on this ground since, in a removed action, if the original service was defective, service of new process under 28 U.S.C. § 1448 may be authorized"; footnote reference omitted).

The procedures that must be followed for correcting defective service or lack of service after removal are those set forth in the Federal Rules of Civil Procedure. *See,* Fed. R. Civ. P. 81(c) (stating that "[t]hese rules apply to civil actions removed to the United States district courts from the state courts and govern procedure after removal"). Congress, in addition, in U.S.C. section 1447(a) has authorized: "[i]n any case removed from a State court, the district court may issue all necessary orders and process to bring before it all proper parties whether issued by the State court or otherwise."

The same arguments advanced here by defendants were soundly rejected by Judge Lewis J. Liman of the Southern District of New York in *Vij v. Jhanjee,* 2024 WL 1521298, at *3 (S.D.N.Y. 2024), stating:

> Under federal law, once a case has been removed by the filing of a notice of removal, "the State court shall proceed no further unless and until the case is remanded." 28 U.S.C. § 1446(d); *see Almonte v. Target Corp.,* 462 F. Supp. 3d 360, 365 (S.D.N.Y. 2020) ("A federal district court has jurisdiction on the day that a notice of removal is filed with the Clerk

-9-

of that court . . . . A State court, on the other hand, loses jurisdiction on the date the notice of removal is filed in State court." (quoting *Riveredge Owners' Ass'n v. Town of Cortlandt, Inc.*, 2016 WL 6462387, at \*7 (S.D.N.Y. Nov. 1, 2016)). "Under 28 U.S.C. § 1446(d), ***all state-court proceedings must cease once a notice of removal has been filed***, unless and until the action is remanded to the state court." *Kane v. St. Raymond's Roman Cath. Church*, 2015 WL 4270757, at \*3 (S.D.N.Y. July 13, 2015) (Nathan, J.). Plaintiff's state-court complaint is thus "void." *Id.*

*Vij v. Jhanjee*, 2024 WL 1521298, at \*3 (S.D.N.Y. 2024) (Liman, J.) [emphasis added by bold italics]; *accord, Beecher v. Wallace*, 381 F.2d 372 (9th Cir. 1967) (state summons became null and void once the action was removed to federal court).

The plaintiff's invocation of federal law was plainly asserted in the state summons with notice, quoted above, by citing a federal statute,  26 U.S.C. § 7434, and was plainly sufficient to alert the defendants of their right to remove to this Court - - which the defendants did - - and to confer jurisdiction on this Court.  The defendants, moreover, have sadly misrepresented the law of New York State regarding the contents of the statute notice that accompanied the summons.  There was no need to state every cause of action or claim for relief and no need to go into any factual detail.  The plaintiff, in the present case, sufficiently described the action and stated the relief and amount sought in damages.

Plaintiff timely effected service in compliance with Rule 4 of the Federal Rules of Civil Procedure following removal and before the deadline set forth by this Court for the service of a summons with the amended complaint.

The duplicitous strategy of a defendant removing a state court action to federal court and then using the New York CPLR to have a case dismissed - - thereby misusing

-10-

Rule 12(b) - - has been done before and soundly rejected.  Judge Liman in another decision, *Stevens & Co., LLC v. Espat*,  2024 WL 4593645, at *3 (S.D.N.Y.  2024), said:

> It is correct that Plaintiff did not file a complaint in state court.  As permitted New York state court procedure, it initiated this action by a summons with notice.  A summons with notice need not allege any facts.  A summons with notice need only state the nature of the action, the relief sought, and, with the exception of an action for medical malpractice, the sum of money for which judgment may be taken in case of default. N.Y. C.P.L.R. 305(b); *see Parker v. Mack,* [61 N.Y.2d 114] 460 N.E.2d 1316, 1317 (N.Y. 1984) (the summons need only provide the defendant "basic information concerning the nature of plaintiff's claim and the relief sought").  It need not "apprise the defendants of the precise legal theory behind the plaintiff's case," *Pilla v. La Flor de Mayo Express, Inc.*, [191 A.D.2d 224], 595 N.Y.S.2d 678 (1st Dep't 1993); *Gregory v. Custom Partners LLC,* 2010 WL 3280583 (Sup. Ct. N.Y. Cnty. Jan. 20, 2010); or contain factual details, *Smith v. Subbaiah,* 2013 WL 3816532 (Sup. Ct. N.Y. Cnty. July 18, 2013).

As Judge Liman of the Southern District recognized, citing state cases, a summons with notice need not enumerate every legal theory and go into the facts - - as defendants astonishingly argue.  The Appellate Division, First Department, in *Pilla v. La Flor de Mayo Express, Inc.*, 191 A.D.2d 224 (1st Dept. 1993), quoted by Judge Liman, sustained a summons with notice that described an action only as "personal injury."  The First Department, in *Pilla*, stated:

> The requirements of CPLR 305(b) were complied with in the instant case. While the words "personal injury" may not apprise the defendants of the precise legal theory behind plaintiff's case, they

-11-

adequately apprise defendants of the "nature of the action" at this stage of the litigation.

In *Stevens & Co., LLC v. Espat*, 2024 WL 4593645, at *3 (S.D.N.Y. 2024), decided by Judge Liman, the court stated:

> Taken to its logical conclusion, Defendant's legal position admits of no limiting principle and leads to absurd results. Because a summons with notice is not required to plead facts, Defendant's argument would result in dismissal for every case initiated by summons and notice for which a basis for federal subject matter jurisdiction exists. The clever defendant needs only file a notice of removal and then, once the case is removed, immediately make the argument — as Defendant makes here — that the action must be dismissed because the summons does not contain the facts necessary to state a claim for relief. It is no answer to say that a plaintiff can avoid this result by omitting from the summons the facts from which the basis for removal can be discerned. New York law requires the plaintiff serving a summons with notice to state the parties, the nature of the action, and — in most circumstances — the relief sought. The upshot would be to deprive plaintiff of the form of initiating an action expressly permitted by the New York Civil Practice Law and Rules.

Perhaps the defendants in the present case, to be charitable, were confused and misguided. As Judge Liman, in *Stevens & Co.*, explained:

> Intentionally or unintentionally, Plaintiff and Defendant both fell into the blindspots that exist between the Federal Rules of Civil Procedure and the New York Civil Practice Law and Rules. Defendant could have, but did not, demand a complaint under C.P.L.R. 3012(b) after receiving the summons in state court. Plaintiff could have, but did not, file its complaint immediately in the federal docket after removal, even though, had the case stayed in state court, the maximum time would already have

-12-

> run for the filing of the complaint.  Defendant acted on a literal reading of the Federal Rules, yielding an absurd result.  The Court will not now waste the time of either party by dismissing the summons for failure to state a claim on which relief can be granted, thereby requiring the re-filing of a complaint which has already been filed and to which the Defendant has already answered.

*Stevens & Co., LLC v. Espat,* 2024 WL 4593645, at *4 (S.D.N.Y. 2024).

The defendants, instead of reaching for a date calculator in an effort to have this case dismissed for statute of limitations grounds, would have been better advised to research and read CPLR 306-b, Rule 81(c) of the Federal Rules of Civil Procedure, and 28 U.S.C. sections 1446(d), 1447(a), and 1448, and the aforecited federal cases - - that all say that service of the summons with notice became entirely moot once the action was removed to this Court, and that service from that point was and is to be conducted in accorded with federal law, not state law.

Defendants' attempt to obtain dismissal under Rule 12(b)(6), based on an alleged obligation to serve a state-court summons with notice after removal, is procedurally improper and devoid of legal support.  Rule 12(b)(6) addresses the sufficiency of a plaintiff's claims - - not service of process.  Alleged defects in service are governed exclusively by Rule 12(b)(5), and courts in this Circuit, discussed and quoted above, have repeatedly rejected efforts to recharacterize and conflate service arguments as merits-based deficiencies.

Defendants cite no authority for the remarkable proposition that a complaint satisfying Rule 8 can, nevertheless, "fail to state a claim" because Plaintiff allegedly did not re-serve state process after removal.  That omission by defendants is unsurprising,

-13-

because no such authority exists. Removal terminates the applicability of state procedural rules, and any uncompleted service must be effected pursuant to the Federal Rules of Civil Procedure. *See*, 28 U.S.C. § 1448. Defendants' argument ignores black-letter law and conflates distinct procedural doctrines in a manner that is particularly troubling given that their motion is made by experienced federal litigators. Courts do not dismiss actions under Rule 12(b)(6) based on alleged post-removal service obligations, and defendants' effort to do so here borders on frivolous motion practice. For defense counsel, experienced federal litigators, to append and sign their names to a Memorandum of Law that fundamentally distorts and misrepresents both federal and state law is abusive.

Judge Liman noted in *Steven & Co.*, as quoted above, that there may be "blindspots that exist between the Federal Rules of Civil Procedure and the New York Civil Practice Law and Rules" that may explain the many lapses by defendants and their counsel. Their insistence upon a non-existent, fictional obligation by the plaintiff to serve his state summons with notice, despite the action's removal, is profoundly troubling. In the process, they cite only a lower court from state court [*Cheselka v. E. Air Lines, Inc.*, 93 Misc. 2d 219 (Sup. Ct. New York County 1978)] - - instead of citing a subsequent enactment of CPLR 306-b from 1992 - - regarding the correct 120-day time frame for a plaintiff to serve a summons with notice had this action *NOT* been removed. *See*, 28 U.S.C. section 1448 and the federal statutes and Rules governing removal.

Still, defendants' evident "confusion" about the governing law does not appear to be the product of a "blind spot" or some ambiguity between the CPLR and the Federal Rules of Civil Procedure. They have insisted repeatedly on their absurd proposition

-14-

conflating Rule 12(b) with service of process and statute of limitations. On June 6, 2025, Kevin K. Yam, the lead counsel for defendants, and co-author of the moving Memo of Law, previously sent a letter to this Court [appended to defendants' motion] that improperly conflated the statute of limitations with an inapplicable state procedural rule. Defendants now compound that error by advancing the same warped and tortured argument in their memorandum of law. Putting aside Mr. Yam's incorrect belief about a "May 12" deadline based on his imagined and fictional "60–day" rule [*see,* CPLR 306-b concerning 120 days to serve from date of filing the state notice (had this action not been removed)], Rule 12(b) of the Federal Rules of Civil Procedure does not allow such an impermissible and forced conflation of a statute of limitations with supposed state procedural rules——that are no longer applicable once an action is removed to this Court.

The late Judge Cooper, in his address to lawyers newly admitted to federal court, referred to at the very beginning of this Opposition Memorandum of Law, advised:

> Next: When you commit an error or make a slip of the tongue, face up to it, apologize quickly, and get on with the matter in hand. Save yourself the embarrassment and humiliation by giving yourself away while everyone is watching. Don't make believe it doesn't count anyway. Oh yes it does count—heavily against you.

Proceedings Concerning Admission to the Bar, etc., October 30, 1979, p.15, lns. 12-18, before Judge Irving Ben Cooper, *supra*. Defense counsel, in their Reply, should decide whether an apology or "doubling down" is in their best interests. Should defendants "double down," i.e., becoming more adamant in adhering to their strategy, then their intent is obvious.

## POINT II

### THE ILLEGAL ACTS OF FORBIDDEN RETALIATION AND AIDING AND ABETTING CLAIMS OF THE AMENDED COMPLAINT, ARE SUFFICIENTLY STATED AT THE PLEADING STAGE AND ARE, IN FACT, BATHED IN FACTUAL RECITATIONS

Main Street of Downtown Flushing, Queens, from Northern Boulevard and extending until Dahlia Avenue by the Queens Botanical Gardens, is the area that attracts the most Asians in New York City, particularly those of Chinese and Korean descent. The area's commercial heart is the intersection of Main Street and Roosevelt Avenue, at the number 7 train subway entrances, and extending for several blocks in all directions. The Main Street area, where defendant Chung Fat Supermarket is located, is known as the Mecca for New York City's populous Chinese community. This vibrant neighborhood is known for its diverse community, bustling and intensely dense streets, and a wide array of hotels, shops, restaurants, eateries, and ad hoc sidewalk vendors that cater to the Asian population. Overall, Downtown Flushing's Main Street is the area that attracts most of the City's Asians, offering a unique blend of cultures, cuisines, and commerce that makes it a prime destination for both locals and visitors, not to mention the throngs of foreign tourists, out-of state visitors, and residents who come annually to attend the professional U.S. Open tennis matches at nearby Arthur Ashe and Louis Armstrong Stadiums and the Billie Jean King National Tennis Center or who visit to root for the New York Mets professional baseball team, at nearby Citifield.

The actual videotape, as stated in the Amended Complaint, depicts the plaintiff comforting the cashier as she was weeping, relating the unwanted sexual advances.

-16-

Knowing that the Chinese mercantile and commercial community is tightly-knit, some of the named defendants - - as stated in the Amended Complaint - - initially unsuccessfully ordered the plaintiff to delete the video surveillance tape that captured the sexual harassment. When the plaintiff refused to spoliate evidence, the defendants then made an edited version of a different surveillance video tape in order to ruin the plaintiff and disseminated it.

The Amended Complaint specifically recites:

40. . . . . Video surveillance footage of Plaintiff's well-intentioned action of boosting the frightened Zhao's moral courage to report Chen's unconsented-to sexual aggression was deliberately edited out of context. Defendants later circulated, shared, sent, and distributed the edited video surveillance footage to other supermarkets and managers in the Flushing, Queens County, neighborhood where Chung Fat is located, in order to falsely suggest of that Plaintiff and Zhao were, prior to the December 11, 2021 incident, engaging in an inappropriate romantic relationship. Defendants did so with malevolent intent to harm the Plaintiff and to distract from the acts of sexual aggression to which Chung Fat's financially, economically, and emotionally vulnerable female employees were subject.

41. The malicious and defamatory rumors, intentionally stirred by the Defendants and their circulation within the close-knit Asian commercial and mercantile community of Flushing, and the edited and out-of-context footage, harmed the Plaintiff. . . .

\*\*\*\*\*\*\*\*

52. Defendants' conduct violated the NYSHRL and NYCHRL, prohibiting,

*inter alia*, retaliation of those employees and persons engaging in protected activity as that term is defined by each statute.

-17-

53. As a result of Defendants' conduct, Plaintiff has been damaged. The defendants, all of them, as stated in the Amended Complaint, took their edited, highly distorted version of the videotape and liberally disseminated it throughout this Mecca of Downtown Flushing, targeting their fellow merchants and other Asian supermarkets in this area. The devastating effect of this distribution is obvious: (a) it made it seem that it is the plaintiff, and not the real culprit, who is a notorious sexual predator; (b) it was designed to make sure that the plaintiff would be unemployable and blacklisted, if not as a sexual predator, but as a whistleblower, who could not be trusted by potential bosses; (c) it was designed to label the plaintiff as a troublemaker, and (d) it contributed to the deterioration of the plaintiff's marriage and eventual divorce action ensued.

The Amended Complaint further states that all of the defendants controlling the operation of the Chung Fat Supermarket are not mere employees, and that most of the defendants are family. "At all times . . . Defendants were a joint employer and/or single integrated employer with respect to Plaintiff." *See*, Amended Complaint, paras. 9-17.

"On December 11, 2021, a female cashier who worked at Chung Fat, Shun Zhang Zhao ("Zhao"), complained to Plaintiff that she had been subjected to unwanted sexual abuse, harassment, and physical groping by Defendant Chen in the basement of the supermarket." Amended Complaint, para. 24.

At a time when most human beings would have "looked the other way" in the face of injustice, the plaintiff, when Zhao advised him of what his boss, Chen, had done, went with her to complain, helped her call 911, and went with her to the police precinct. The

-18-

easy path for the plaintiff, since he was the night shift manager at the supermarket, would have been to comply with his bosses' repeated directions to delete the "smoking gun" video evidence. The plaintiff courageously, at major cost, did not choose "to look away."

Individuals, throughout human history, unfortunately choose to remain silent and avoid confronting the reality of wrongdoing for a variety of reasons, including self-preservation, social dynamics, conformity and obedience to authority, moral disengagement, denial and avoidance, and, especially, fear of reprisals and consequences. Self-preservation is a strong and powerful instinct. People don't just ask, "Is this wrong?" They, instead, ask themselves: "What will happen to me if I were to speak up?"

The very uncomfortable truth of life is that most people who look the other way are not monsters. They are ordinary individuals in systems that reward silence and punish courage. This is why injustice festers and persists - - not because everyone agrees with wrongdoing, evil, and predatory acts - - but because enough people decide that it is safer not to resist, not to report, and not to assist a victim of aggression.

This plaintiff was different, and he suffered the consequences of promptly speaking out and immediately acting to help Zhao, a financially and emotionally vulnerable female cashier at the supermarket, as soon as he was informed of defendant Chen's unwanted sexual advances. The plaintiff faced, among many other consequences, scapegoating, shaming, ostracism, and isolation as a reprisal and backlash for his heroic actions. On or about March 9, 2022, Yue - - the "Big Boss" - - summoned the Plaintiff and went into a furious rant of 20-30 minute duration and then fired him.

The defendants try to minimize plaintiff's heroism by casting this case as merely isolated, innocent, and occasional acts of the "cold shoulder" treatment. The video evidence alone, discussed in the amended complaint, speaks volumes. If a picture speaks 1,000 words then the video of this incident speaks more than 10,000 words. *See, Scott v. Harris*, 550 U.S. 372 (2007) (when a video clearly contradicts a party's version of events, courts should use the facts as shown on the video, rather than accept a witness's account).

Turning to the four claims contained in the Amended Complaint involving the New York State Human Rights Law and the more liberal New York City Human Rights Law, all the averments are pleaded sufficiently, even amply, at this initial pleading stage.

In reviewing a motion for dismissal under Rule 12(b)(6), all factual allegations in the complaint are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. *See, Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78 (2d Cir. 2015). To survive a motion to dismiss, the complaint must "state a claim to relief that is plausible on its face," permitting " 'the reasonable inference that the defendant is liable for the misconduct alleged.' " *Schwab v. Smalls*, 435 F. App'x 37, 39 (2d Cir. 2011), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995). A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See, e.g., Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 508 (2002); *Littlejohn v. City of New York*, 795 F.3d 297, 307-308 (2d Cir. 2015).

In *Doe v. Columbia University,* 831 F.3d 46, 59 (2d Cir. 2016), the Second Circuit held concerning a district court's review of a complaint at the pleading stage:

> The role of the court at this stage of the proceedings is not in any way to evaluate the truth as to what really happened, but merely to determine whether the plaintiff's factual allegations are sufficient to allow the case to proceed. At this stage, the court is compelled to assume the truth of the plaintiff's factual allegations and draw all reasonable inferences in his favor.

The defendants' principal argument is that the temporal proximity of a little less than three months from Dec. 11, 2021, the date of the sexual harassment and plaintiff's immediate assistance in reporting it to his bosses, to March 9 or 10, 2022, the date of plaintiff's termination is too remote temporally to prove causation.

The defendants, in their misleading memorandum of law, would like this Court to believe that all the defendants did was to give occasionally a "cold shoulder" to the plaintiff. The defendants do not mention how they participated in unsuccessfully demanding that the plaintiff delete the "smoking gun" video evidence of the acts of sexual harassment. The defendants' motion also entirely ignores their joint selective editing of the original videotape by them and their wide distribution of the altered video version to the mercantile community of Downtown Flushing, in an effort to make it seem that the plaintiff is either a sexual predator or troublemaker, thus trying to ensure that he would be an unemployable pariah.

They also do not discuss the other contentions of the fact-filled amended complaint, with the 20-30 minute profanity-laced verbal rant to which the plaintiff was exposed, with defendant "Big Boss" Yue bitterly belittling and viciously denouncing him

-21-

right before his termination. The facts of the Amended Complaint are stark; they do not merely recount simple, minor, and unrelated acts of isolation and ostracism.

As to the temporal proximity, the defendants' contention that a two-months period is acceptable, but that a three-month lapse is too attenuated and should result in dismissal is absurd, does not reflect the law within this Circuit, and borders on the frivolous.

The Second Circuit has regularly held that "[t]he causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." *Summa v. Hofstra Univ.*, 708 F.3d 115, 127–128 (2d Cir. 2013). The Second Circuit, however, has not "drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship," and has held that each case must be decided according to its unique context. *See, Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009).

Although the Second Circuit has not defined the outer limits beyond which a temporal relationship is too attenuated to establish causation, it has consistently recognized that five months of temporal proximity between protected activity and an adverse employment action is sufficient to establish a prima facie case of retaliation. *See, Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013) (finding "[t]he seven-month gap between [plaintiff's] filing of the instant lawsuit and the decision to terminate her employment privileges is not prohibitively remote."); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) ("Though this Court has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, we have previously held that five

-22-

months is not too long to find the causal relationship."; *Espinal v. Goord*, 558 F.3d at 129, *supra* (the passage of only six months was sufficient); *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45-46 (2d Cir. 1980) (finding that the lapse of eight months between an EEOC complaint and retaliatory act indicated a causal connection); *Brown v. City Univ. of N.Y.*, 2022 WL 4637818, at *18, 2022 U.S. Dist. LEXIS 180062 (E.D.N.Y. 2022) "[T]he Court finds that the seven-month temporal gap is sufficient for inferring causation."); *De Figueroa v. New York State*, 2022 WL 4111028, at *8, 2022 U.S. Dist. LEXIS 162273, at **19-21 (E.D.N.Y. 2022) (finding "that a period of four to five months between a protected activity and an adverse employment action is sufficient to raise an inference of causation. After all, a plaintiff's burden at the *prima facie* stage is '*de minimis*.'").

The defendants' attempt to dismiss the counts of "Aiding and Abetting" is also unavailing. This Court, in *Kekovic v Titan Motor Group LLC*, 22-CV-2142 (MKB), 2025 WL 2173651, 2025 U.S. Dist. LEXIS 147485 (E.D.N.Y. 2025) (Brodie, J.), recently denied defendants' motion for summary judgment on retaliation and aiding and abetting claims. This Court stated that liability can be cast on owners of the business and other individuals who engaged in or participated in the unlawful incidents. *Id.*, 2025 WL 2173651, at *15-16; *accord, Ellis v. Century 21 Dept. Stores,* 975 F. Supp. 2d 244 (E.D.N.Y. 2013) (Brodie, J.) (denying defendant's summary judgment motion). Here, the Amended Complaint, in paragraphs 9-17, stated the ownership and operational roles of the four individual defendants and attributed the unlawful acts to all of them. The Amended Complaint continued and specifically contended that:

-23-

39.    . . . Defendants (a) attempted to cover up the incident by directing Plaintiff to delete the security footage of the sexual assault -- which he refused, and (b) intentionally subjected the Plaintiff to an unlawful campaign of patently vindictive retaliation for supporting the victim of sexual harassment.

\*\*\*\*\*\*\*\*

47.    Plaintiff's termination occurred less than three (3) months after he engaged in protected activity by supporting a victim of discriminatory sexual conduct and refusing to delete security video surveillance footage of the sexual assault; his actions were in opposition to Defendants' prohibited discriminatory conduct.

\*\*\*\*\*\*\*\*

51.    **All Defendants were aware** that Plaintiff assisted Zhao in filing a complaint with Fen, filing a police report, refusing to delete the video evidence, calling 911, and escalating her complaints to the 'Big Boss'. [emphasis added in boldface].

52.    Defendants' conduct violated the NYSHRL and NYCHRL, prohibiting, *inter alia*, retaliation of those employees and persons engaging in protected activity as that term is defined by each statute.

Unsurprisingly,  the defendants focus only on isolation and ostracism suffered by the plaintiff, but make no mention of how they altered and edited the "smoking gun" videotape of Chen's sexual harassment to focus, totally out of context, on the plaintiff's physical gesture of calming the female cashier, then manufactured numerous copies of the altered videotape, and embarked on its widespread distribution throughout the tightly-knit mercantile community of Downtown Flushing, executing upon their joint malevolent, wicked scheme in order to destroy the plaintiff in every conceivable way.

This Court should deny the defendants' motion in its entirety.

-24-

## CONCLUSION

The Plaintiff respectfully requests that this Court enter an Order denying the Defendants' motion to dismiss in its entirety, together with granting the Plaintiff such other relief as this Court deems just and proper, including that contained in the Proposed Order accompanying this Opposition Memorandum of Law.

Dated:  Lake Success, NY
       January 11, 2026

**/s/ James Scott Yoh**
James Scott Yoh
Attorney for the Plaintiff
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042
Tel. (516) 817-0188
yohlaw@gmail.com
